FRUGÉ, Judge
(dissenting).
This court reverses the trial court’s award of workmen’s compensation benefits for total and permanent disability in favor of Curley Gradney. It is the finding of the majority that the trial judge committed no manifest error in its finding that plaintiff was totally and permanently disabled, but that the trial judge erred in his conclusion that the disability was a result of the double hernia caused by the accident on July 19, 1971. I believe my brethren have fallen into error by ignoring the rule of manifest error in reversing a trial court on the finding of fact. It is plain to me that the effect of this decision was to re-try the facts of the case by this appellate tribunal. While it is true that an appellate tribunal has a duty to reverse the findings of the trial judge where they are clearly manifestly erroneous, I am of the opinion that this case does not meet the requirements of the manifest error rule.
My brethren cite the case of Hebert v. Your Food Processing and Warehouse, Inc., 248 La. 197, 177 So.2d 286 (1965) for the proposition that even in a workmen’s compensation case that plaintiff bears the burden of proving his claim by a preponderance of the evidence. The facts in that case differ substantially. The Supreme Court points out that the medical testimony was almost unanimous that the plaintiff was able to return to her previous work. This record, as evidenced by the summari-zation by the majority, is filled with ample medical evidence which is adequate to support the judgment of the trial court. Moreover, the evidence, I believe, preponderates to the fact that the plaintiff is disabled.
Plaintiff suffered a double hernia on July 19, 1971. Bilateral hernioplasties were performed on him on August 9, 1971. Plaintiff began making complaints of severe pain in the left inguinal region, which resulted in a diagnosis by Dr. I.andreneau of left ilioinguinal neuritis, seminal vesicu-litis, and prostatitis. This diagnosis necessitated a subsequent operation which the majority terms as exploratory. However, this procedure was necessary to clean the left inguinal nerve, excise a small neuro-ma, and replace the ilioinguinal nerve in order to remove it from scar formations. It should be noted at this point that plaintiff, in compliance with Louisiana Revised Statutes 23:1221 submitted to surgical procedure, not once but twice for the treatment of his injury. After this procedure, plaintiff continued to have complaints of severe pain in his inguinal region. He was then examined by a urologist, Dr. Frederick G. Rodosta, on February 4, 1972. The diagnosis was (1) a neuroma of the left il-ioinguinal nerve, mild prostatitis, and hypertension. Dr. W. R. Hargrove, a general practitioner, saw plaintiff on May 23, 1971, and treated him thereafter several times. His diagnosis was constriction of the external inguinal ring exerting pressure on the spermatic cord. This was due to the formation of adhesions and scar tissues after the last operation causing compression. While Dr. Landreneau, the original treating physician arid surgeon who performed the surgery on this plaintiff, thought he had recovered as of March, 1972, he did not rule out the possibility for a re-exploration of the left inguinal region if complaints were consistent over a period of approximately six months. He testified that the prostatitis which the plaintiff had developed was a complication of the hernia caused by the catheterization of the patient. He also stated that it was possible some compression of the spermatic cord existed. Additionally, the trial judge in his written reasons states that although the various physicians were not clear as to the exact nature of this problem, Dr. Landre-neau’s post-operative diagnosis of October 6, 1973, of prostatitis seminal vesiculitis and ilioinguinal neuritis arid the diagnosis of Dr. Hargrove and Dr. Rodosta, who examined plaintiff subsequent to Dr. Landre-neau, found similar complaints and their diagnosis corresponded to the post-opera *539 tive condition of October 6, 1973. Of the doctors who examined the plaintiff, not a single one uttered any misgivings as to plaintiff’s sincerity in his expressions of pain and none labeled him a malingerer. It was the opinion of the court that the plaintiff was indeed experiencing considerable difficulty and that he was not a malingerer.
In any event, Dr. Landreneau testified positively that the plaintiff had a 10% permanent, partial disability due to the pain he would sustain when lifting heavy objects in the performance of his heavy, manual labor. This alone does not justify the majority’s reversal of the trial court and the dismissal of the plaintiff’s suit entirely.
Accordingly, it is my opinion after reviewing the evidence, the trial judge could reasonably have concluded that plaintiff was indeed disabled totally and permanently under the workmen’s compensation statute.
For the foregoing reasons, I respectfully dissent.